PARKER, Acting Chief Judge.
Cedric Woodson appeals the final judgment and sentence entered after he pleaded no contest to possession of cocaine, battery on a law enforcement officer, opposing a law enforcement officer with violence, and carrying a concealed weapon. Woodson entered his pleas after reserving his right to appeal his dispositive motion to suppress. We reverse.
In this case, an officer conducting a traffic stop was approached by an individual who identified himself as Frank. Frank advised the officer that a black male named Cedric, who was wearing blue work pants, a white tank top, brown boots, and a black hat over braided hair, had a handgun in his left front pocket. The officer called for backup, and shortly thereafter, the two officers found an individual matching the description that Frank had given them. After observing the suspect enter a store, the officers followed him into the store. Noticing a bulge in the suspect’s left front pant pocket, which the officers could not identify, the officers approached Cedric Woodson from the back. One officer went to his right and the other officer went to his left, each grabbing an arm and wrist in an attempt to escort him out of the store. *966 As they took his arms, one of the officers whispered to Woodson that he was not under arrest, but that he was being detained for the moment and that they wanted to talk to him outside.
Immediately, a struggle ensued. During the struggle, the officers observed Woodson reach into his pants and throw a black metallic object, which they believed to be a gun, into the surrounding crowd of onlookers. Eventually, the officers subdued Woodson and placed him in handcuffs. At this point Woodson stated: “If you want the dope, I’ll give the dope to you.” When the officers searched Wood-son, they found cocaine residue in his pockets. Although the gun was never recovered, Woodson stated that the gun was a toy gun.
Woodson argues that the police did not have any evidence independent of the information provided by Frank, the anonymous informant, on which to justify an investigatory stop. Recently, this court, in Maynard v. State, 742 So.2d 315, 316-17 (Fla. 2d DCA 1999), discussed the different types of informants and reiterated that “[w]hether the police have reasonable suspicion to stop a suspect based on information provided by an informant depends upon the credibility of the informant.” The court must first determine the type of informant involved in order to determine the informant’s credibility. When an informant is anonymous, the information must be confirmed and substantiated in some additional manner. See id.
In this case, the officers testified that they did not know the informant. Both officers involved stated that they identified Woodson from the description given by the anonymous informant, and that when they spotted Woodson at the store, they did not see him engaged in any suspicious activity. As the supreme court has noted, innocent details, without more, are not sufficient to establish reasonable suspicion to stop and frisk an individual under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See J.L. v. State, 727 So.2d 204, 207 (Fla.1998). Like Maynard, the anonymous tip in this case was limited to a description of Woodson and his location, which without confirmation or an independent investigation was not sufficient to justify the stop.
Because the initial police activity in this case was illegal, the State had to prove that there had been an “unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal police action” in order to render the subsequent seizure legal. See Jordan v. State, 707 So.2d 338 (Fla. 2d DCA 1998). Any evidence which is the product of an illegal detention must be suppressed. See id. at 339. Because nothing in this record supports that a break in the chain of illegality occurred, we reverse the denial of the dispositive motion to suppress and remand with directions to discharge Woodson.
GREEN, J„ and HAYES, HUGH D., Associate Judge, Concur.