630 So.2d 666 (1994)
Voltaire BURGESS, Appellant,
v.
STATE of Florida, Appellee.
No. 91-3141.
District Court of Appeal of Florida, Fourth District.
January 19, 1994.
Richard L. Jorandby, Public Defender, and Allen J. DeWeese, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Joseph A. Tringali, Asst. Atty. Gen., West Palm Beach, for appellee.
WARNER, Judge.
We reverse and remand appellant's conviction and sentence because the trial court erred in denying the motion to suppress. See In Interest of B.M., 553 So.2d 714 (Fla. 4th DCA 1989).
In this case a police officer came upon a group of men outside the front of a closed restaurant in the middle of the night. Some of the group were standing and some were lying on the ground. The officer did not know the appellant, who was lying on the ground. He suspected that the appellant might be under 18 and in violation of a curfew (what curfew we are not told). He asked appellant how old he was, and appellant responded that he was 18. Appellant made no movements or took any action which gave rise to any heightened suspicion on the part of the officer. Next, the officer asked appellant to stand up and turn around.[1] As he turned around the officer noticed what he suspected were drugs in appellant's pocket.
Appellant was the only one of the group of men outside the restaurant who was questioned by the officer and ordered to stand up. The officer said that he feared for his safety because he was in a high crime area, and he noted that appellant was on private property.[2] The trial court denied the motion to suppress the drugs found on appellant based *667 on the fact that appellant was on private property which justified the officer's actions. In fact, the court stated, "I agree with the premise that he can't just tell him what  but to see somebody on private property and say stand up, turn around, see if he may have a weapon, I am not so sure he isn't allowed to do that." In this the court erred.
The crime of trespass occurs when an individual, without being authorized, willfully enters upon or remains on property as to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, etc. § 810.09(1), Fla. Stat. See also In the Interest of B.M., 553 So.2d 714 (Fla. 4th DCA 1990). The mere fact that appellant and his friends were on unposted private property (there were no "no trespassing" signs visible) is insufficient to establish a crime. The crime occurs only when appellant stays after being asked to leave. The officers did not testify that they had been asked by the owners to patrol their property for trespassers. And while the officer did not know that appellant was the owner's grandson, if he had only asked him why he was there, appellant either would have left, would have informed the officer of his right to be there, or would have remained without explanation at which time the officer may have had sufficient suspicion to justify an investigatory stop. Compare, State v. Pye, 551 So.2d 1237 (Fla. 1st DCA 1989) (suspected trespass may be grounds for investigatory stop where property posted for "no trespassing" and residents had requested police to make checks for trespassers). Robinson v. State, 551 So.2d 1240 (Fla. 1st DCA 1989) (investigatory stop justified where owner of premises had requested police to spot check for trespassers and prosecute same). Accordingly, this stop cannot be justified on the basis of defendant's presence on private property.
Similarly, the "totality of the circumstances" cannot justify the stop. In Kell v. State, 559 So.2d 731 (Fla. 4th DCA 1990), this court reversed the denial of a motion to suppress holding that the totality of the circumstances did not justify a stop. Specifically, this court said, "The mere fact that the appellant was present in a high crime area, which happened to be where he lived, at nighttime, without more, such as suspicious conduct or unusual circumstances... . does not warrant an investigatory stop." Id. at 731. Recently, in Johnson v. State, 610 So.2d 581 (Fla. 1st DCA 1992), the First District reversed the denial of a motion to suppress finding there were insufficient facts to justify a stop, where an officer ordered a defendant to remove his hands from his pockets and turn around, suspecting the defendant had been engaged in a drug transaction. The officer had seen the defendant talking to a man on a bicycle at a house where police had made numerous drug arrests. Although the officer saw no exchange between the defendant and the bicyclist, he suspected a drug deal had transpired. Rejecting the claims of a justified stop, the First District noted:
Appellant was in his own neighborhood, albeit a high crime area, talking to another person when the police arrived. Officer Bates saw no weapon and articulated no reason initially to believe Appellant was carrying a weapon... . In Curry v. State, 532 So.2d 1316, 1317-18 (Fla. 1st DCA 1985), we stated that the officer's assessment of the circumstances in their totality `must raise a suspicion that the particular individual being stopped is engaged in wrongdoing.' These facts are insufficient to provide the requisite founded suspicion for an investigatory stop and detention.
As to the officer's claim that he feared for his safety, the court stated, "[T]he officer would have no reason to fear for his own safety had he not impermissibly stopped appellant in the first place." Id. at 584.
The recent case of Popple v. State, 626 So.2d 185 (Fla. 1993), held that where there is no articulable suspicion to justify a stop, an officer's direction to a suspect to exit a vehicle, whether characterized as a request or an order, constitutes a show of authority which restrains the individual's movement. Popple requires a reversal in this case where the officer's order to the appellant to stand constituted an unlawful stop without articulable suspicion.
*668 STEVENSON, J., concurs.
HERSEY, J., dissents without opinion.
NOTES
[1] Mr. Burgess testified that the officer told him to stand up and put his hands against the wall. The officer then frisked him, which was when the cocaine was discovered.
[2] In fact, the appellant was the grandson of the owners of the restaurant and had just finished closing up the restaurant. However, as the court pointed out "The cop doesn't know that." That makes no difference in the analysis.